## TYNG v. FIELDS.

*Evidence — expert — opinions — preponderance sufficient to reverse judgment — Contract — construction of.*

In an action where defendant set up a counter-claim for services and materials in repairing a locomotive, an expert called by plaintiff, who had seen the locomotive after it was repaired, was asked: " Could the engine, by any possibility, have been so damaged by wear and tear, or by accident, that, with the parts and materials as testified to by Mr. Fields (one of defendants), $20,000 would have been a reasonable charge for rebuilding her." *Held,* a proper question. It did not call for the opinion of the witness on a hypothetical case, but required him to simply state whether in any event or contingency work of the value named could have been performed.

Where the evidence was such as to show that the finding of the referee on the question of damages was not in accordance with the truth. *Held,* that the judgment should be reversed. *Finch* v. *Parker,* 49 N. Y. 1 ; *Townsend Manf. Co.* v. *Foster,* 51 Barb. 346 ; *Thompson* v. *Menck,* 22 How. 431.

Defendants agreed to repair a locomotive engine for defendant, defendant agreeing to pay 50 per cent of the bills as the work progressed, and the balance at the completion of the work. Plaintiff not paying the first named 50 per cent, defendants stopped the work, and before it was renewed the locomotive was destroyed by fire. *Held,* that defendant was entitled to recover only the 50 per cent first named upon the work already done. *McConihe* v. *N. Y. & Erie R. R. Co.,* 20 N. Y. 497, 498.

APPEAL by plaintiff from a judgment in favor of defendants, entered upon the report of a referee.

The action was brought by Thomas M. Tyng against Peter Fields and another, to recover moneys of plaintiffs paid and received by defendants, and also for a breach of contract to repair two locomotives owned by plaintiff. Defendants denied the averments of the complaint, and set up a counter-claim for work and materials furnished in repairing engines, of $8,000.

*Marsh & Wallis,* and *Wm. F. Shepherd,* for appellant.

*A. P. Whitehead,* for respondents.

LAWRENCE, J.

The following extracts from the opinion are believed to be all that is of general importance therein :

" Among others, one Davis was examined on behalf of the plaintiff. It appeared that he was, at the time of his examination, the superintendent of the Lancaster locomotive works, and had been

in business as a machinist for about thirty years, and was familiar with the cost of building, rebuilding and repairing locomotive engines, and also with the value of the materials and labor necessary for that purpose in the years 1864 and 1865, being the period during which the engines referred to in the pleadings in this case, were in the hands of the defendants. His testimony sufficiently shows that Davis was an expert, quite competent to testify as to the value of the work and labor performed and materials furnished by the defendants for the plaintiff, and therefore it seems to me, that the following question which was asked by plaintiff's counsel was a proper one. "Q. Could the engine 'Gazelle,' by any possibility, have been so damaged by wear and tear, or by accident, that with the parts and materials as testified to by Mr. Fields, $20,000 would have been a reasonable charge for rebuilding her?" This question was objected to by the defendant's counsel, and the objection being sustained by the referee, the plaintiff's counsel excepted. I think this ruling was erroneous. Fields, who was referred to in the question, was one of the defendants, and he had in his testimony stated that certain portions of the engine "Gazelle" had been used in rebuilding or repairing the engine. It seems to me that it was competent to ask the witness, who was an expert, and had seen the "Gazelle" whether it was possible that such an engine could have required repairs that amounted in value to $20,000. It was a direct question, calculated to point out distinctly to the witness the subject to which his mind was to be directed, and I think a legitimate way of ascertaining from the witness what was the value of the defendant's work and services. The question did not call for the mere opinion of the witness upon a hypothetical case, nor did it require him to speculate upon the value of the repairs put upon the engine. He had seen the "Gazelle" after she was repaired, had heard the testimony of Fields, and the question required him simply to state whether, in any event or contingency, work of the value claimed by the defendants could have been performed upon that engine."

" Again, the referee has found that the agreement between the plaintiff and defendants was, that the work should be done by the day's work ; that the prices were to be the ordinary shop prices, and that the bills were to be rendered monthly ; that fifty per cent was then to be paid, and the balance on the completion of the engine. He also finds that the defendants performed work, and furnished materials toward repairing the engine " Quincy," amounting according to bills rendered by the defendants, and proved to be

correct, to about April, 1865, in the aggregate to $2,714.40, upon which the plaintiff had, up to that time, made payments by cash and materials, to $693.76, leaving a balance owing and unpaid to the defendants, of $2,020.64, which, with interest to the date of his report, the referee finds amounted to $2,737.55."

"It is there found that the defendants suspended work upon the same engine because the plaintiff made default in the payment of the fifty per cent of the bills referred to, after which a fire accidentally occurred to the premises of the defendants, by which the same engine "Quincy" was burned and destroyed."

The referee then proceeds to allow to the defendants the full amount found by him to be due upon the "Quincy," at the time the fire occurred, forgetting apparently that only fifty per cent of the amount was due at that time by the agreement between the parties, and that the remaining fifty per cent was not to become due until the final completion of the engine, an event which never occurred. The fire was accidental and does not appear to have been in any way connected with or produced by the plaintiff's alleged breach of contract, and he cannot be compelled to do, in consequence of the fire, otherwise than his contract obliged him to do. *McConihe* v. *N. Y. & Erie R. R. Co.*, 20 N. Y. 497, 498."

*Judgment reversed and new trial ordered.*